LUCAS, Commissioner of Internal Revenue, v. DANIEL (two cases).

Nos. 5983, 5984.

Circuit Court of Appeals, Fifth Circuit.

Nov. 25, 1930.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Robert Ash, of Washington, D. C., for respondents.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

These two cases involve appeals by the Commissioner of Internal Revenue from the adverse rulings of the Board of Tax Appeals upon asserted liability of the respondents for additional income taxes. They were tried and disposed of as one case by the board and will be treated in the same manner here.

The facts were stipulated, and we quote and adopt the board's summary thereof as follows:

"1. The petitioners, S. B. and Charles R. Daniel, reside in Wichita Falls, Texas.

"2. In 1902 and 1903, the petitioners' parents, S. M. and Hattie S. Daniel, acquired 640 acres of land in Wichita County, Texas. Some years prior to 1919 shallow oil production was discovered on this property, but the production was relatively small. In October, 1919, oil in large quantities was discovered at a depth of about 1300 feet. If depletion, based on discovery values is allowable, the amounts are as follows:

"1922:
"S. B. Daniel, $9,797.60
"Charles R. Daniel, $9,797.60

"1923:
"S. B. Daniel, $6,922.35
"Charles R. Daniel, $6,922.35

"3. The parents of the petitioners herein, deeded to Charles R. Daniel and S. B. Daniel, on November 19, 1919, an undivided two-thirds interest in the mineral rights on the property for the period to December 31, 1920. On December 8, 1920, the parents executed another deed conveying to the sons an undivided two-thirds interest in the mineral rights on the property until December 31, 1921. It was the parents' intention to give to the petitioners a two-thirds interest in the fee of the land or in case a sale took place to give them two-thirds of the receipts upon sale.

"In adjusting the tax returns of the petitioners for 1919, 1920 and 1921, the respondent permitted the petitioners to value the gift as of November 19, 1919, and to take advantage of all discovery valuations as the development of the property took place.

"4. During the latter part of 1921 the Magnolia Petroleum Company offered $150,000 in cash for the mineral rights on the property. The parents were willing to accept the offer and divide the money $50,000 to themselves and $100,000 to the sons.

"5. The sons deemed the sale inadvisable and agreed to pay to their parents $50,000 for the one-third interest which the parents had planned to retain. In accordance with this agreement, the parents on December 28, 1921, deeded to the petitioners for a consideration stated to be $10 and love and affection, 600 acres of this property. Forty acres of the total 640 acres were retained by S. M. and Hattie S. Daniel as a homestead.

"6. As a matter of fact, a two-thirds interest in the property was deeded in fee as a gift to the petitioners and a one-third interest was purchased in fee for $50,000 by the petitioners.

"7. In determining the petitioners' tax liability for the years in question the commissioner has allowed depletion to the petitioners on a mineral value of $50,000."

Only a question of law is involved, i. e., are the taxpayers entitled to depletion allowances upon the fair market value of the property as of the date of the donation, as found by the board, or must depletion be confined to the cost of the property?

The applicable statute is the Revenue Act of 1921 (42 Stat. 227), from which we quote what petitioner claims are pertinent sections, as follows:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted."

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that * * *

"(2) In the case of such property, acquired by gift after December 31, 1920, the basis shall be the same as that which it would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift. * * * "

The commissioner contends that the taxpayer should be confined to the cost or sum actually paid out by the respondents, to wit, $50,000, because the last-quoted section says that depletion and depreciation shall be "based upon cost." However, subparagraph 10 of section 214(a) also contains a proviso that where mines, oil and gas wells, etc., are involved the taxpayer, for depletion purposes, shall be permitted to add to his capital the increase in value resulting from discovery of such minerals within a period not to exceed thirty days, which, of course, would have been available to the donors in this case had they retained the property. Petitioner further contends that the issue is affected by the above-quoted subsection (2) of section 202 (a) of the Revenue Act of 1921, which declares that as to property "acquired by gift after December 21, 1920, the basis [for gain derived or loss sustained from sale or other disposition of property] shall be the same as that which it would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift." However, that section of the statute deals solely with the matter of gain or loss in sales or other dispositions from which profit is derived, and not with depletion or depreciation. We cannot see that it has any application here. No specific provision is made in the act as to the basis for depletion where the property was acquired by gift, but section 214(a) declares that in the case of mines, oil and gas wells, depletion shall be allowed based upon cost and where they are acquired by gift, there is, of course, no cost; hence the Board of Tax Appeals has uniformly held that the fair market value at the time of acquisition was the correct basis for the allowance of depletion. Section 214(a) of the Act of 1921 (42 Stat. 241) declared that there should be deducted from income "in the case of mines, oil and gas wells, [etc.], a reasonable allowance for depletion * * * according to the peculiar conditions in each case, based upon cost," etc. It would seem that there was, therefore, no intention to deny the right to depletion to anyone, and some reasonable basis had to be found upon which it could be calculated in the case of a donee. In construing similar provisions in the acts, prior to 1921, the Board of Tax Appeals (Appeal of Bockhoff, 3 B. T. A. 560, and Appeal of The Hub, Inc., 3 B. T. A. 1259) held that a donee was entitled to depletion, and in McKinney's Case, 16 B. T. A. 804, a like ruling was announced as to the Act of 1921, in which no change affecting this matter had been made. The board simply held that cost, when applied to a donee, was the fair market value of the property when received, citing in support thereof Appeal of Gilbert Butler, 4 B. T. A. 756; Appeal of The Hub, Inc., supra; Appeal of F. W. Mathiessen, Jr., 2 B. T. A. 921; Matthiessen v. U. S., 65 Ct. Cl. 484; and Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 72 L. Ed. 714. Unless a donee is to be denied the right altogether, which does not seem to have been the intention of Congress, then some reasonable basis had to be found for determining cost in such cases, and we think the board was correct in adopting the fair market value as the price or cost of property acquired in that manner. Cost does not always mean the price paid for a thing. In the case of a donation the donor evidently considers the love, affection, esteem, or other reasons therefor, at least equivalent to the value of the property given and these are sufficient in law to sustain the validity of such a transfer. Would the court be justified in disregarding such considerations and in saying that the whole of a capital asset so acquired should be taxed as income? We think not. See Heiner v. Tindle, 276 U. S. 586, 48 S. Ct. 326, 72 L. Ed. 714. The amendment of section 202(a) of 1921, which, in case of sale or other disposition of property acquired by gift or donation, declared that the basis for taxation should be the same as it would have had in the hands of the last owner who had "not acquired by gift," 26 USCA § 935(a) (2), was to prevent the evasion of taxation. However, the act left in force the provision found in subparagraph (3) that where such property had been acquired "by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of such acquisition." 42 Stat. 229. While, as we have indicated above, section 202 (a) is applicable only to sales or other transactions from which a gain is derived, still its provisions being in pari materia, we think show the intent of Congress as to the basis for valuation where property was acquired by gift or donation, in which there could be no actual determination of cost to the donee.

The ruling of the Board of Tax Appeals is affirmed, and the petition is denied.